IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRUCE J. MAYNOR, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-20-437-JFH-SPS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

The claimant Bruce J. Maynor requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-one years old at the time of the administrative hearing (Tr. 421). He completed high school and has past relevant work as a heavy truck driver and livestock farm worker (Tr. 21-22, 202). The claimant alleges he has been unable to work since an alleged onset date of December 31, 2016, due to depression, back pain, diabetes, high blood pressure, high cholesterol, and pancreatitis (Tr. 201).

## Procedural History

On November 9, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Edward M. Starr conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated June 15, 2020 (Tr. 10-23). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ determined that the claimant had the severe impairments of degenerative disc disease, diabetes mellitus, depression, post-traumatic stress disorder, and personality disorder (Tr. 13). He then found at step four that the claimant had the residual functional

capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl; and he could frequently handle, finger, and reach bilaterally with upper extremities.  Additionally, the ALJ found that the claimant was limited to simple, routine, and repetitive tasks; that he could respond to supervision that was simple, direct, and concrete; and that he could have occasional interaction with co-workers, but that he should have no interaction with the public (Tr. 15).  The ALJ thus concluded at step five that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, photocopy machine operator, router, and collator operator (Tr. 22-23).

## Review

The claimant contends that the ALJ erred by:  (i) only identifying jobs that exceed his assigned RFC, (ii) failing to identify a significant number of jobs he could perform in light of the assigned RFC.  The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") to determine if there were jobs the claimant could perform with his limitations (Tr. 436-439).  He posed a series of hypothetical questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform, although only the first is relevant here.  The ALJ posited an individual with the age and education of the claimant who was:

> limited to light work as defined by the regulations with additional limitations. Occasional climb, balance, crawl, kneel, stoop, crouch; frequently finger, handle and reach bilaterally. The person is limited to simple, routine repetitive tasks. The person can respond to supervision that is simple, direct, concrete. The person can occasionally interact with coworkers but should not interact with the public

(Tr. 437). The VE, having already identified the claimant's past relevant work, identified three light jobs such a person could perform: (i) photocopying machine operator, DICOT § 207.685-014, with approximately 10,000 jobs nationally; (ii) router, DICOT § 222.587-038, with approximately 34,000 jobs nationally; and (iii) collator operator, DICOT § 208.685-010, with approximately 40,000 jobs nationally (Tr. 437-438). During the hearing, the ALJ had instructed the VE to inform him if any of her answers were inconsistent with the Dictionary of Occupational Titles ("DOT"), and she stated that she would (Tr. 423). The VE indicated during her testimony that all three jobs identified had a Specific Vocational Preparation ("SVP") number of 2. *See* DICOT §§ 207.685-014, 222.587-038, 208.685-010.

In his written decision, the ALJ determined that the claimant's RFC included the limitations from hypothetical described above (Tr. 15). He then adopted the VE's testimony that the claimant could perform the light jobs of photocopying machine operator, router, and collator operator, and he further found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 23).

First, the claimant contends that he cannot perform the jobs of photocopying machine operator, router, and collator operator because they require an SVP, or reasoning level, of two. He asserts that because the ALJ limited him to simple, routine, and repetitive

tasks that this constitutes a conflict with the Dictionary of Occupational Titles ("DOT"). Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict with regard to the reasoning levels of the jobs identified here. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The claimant correctly notes that all three jobs identified by the ALJ have a reasoning level of 2. *See* DICOT §§ 207.685-014, 222.587-038, 208.685-010.  A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  *See* DICOT §§ 207.685-014, 222.587-038, 208.685-010.  The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job.  *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to

performing only simple tasks.") [citations omitted]. The claimant asserts that this reasoning level is incompatible with simple, routine, repetitive work. The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

As part of this argument, the claimant also contends that the ALJ's assigned RFC failed to account for moderate limitations in concentration, persistence, and pace that were identified at step three of the sequential evaluation, which, he asserts, includes a need to avoid fast-paced work. At step three, the ALJ indeed found moderate limitations in concentration, persistence, and pace, then summarized the concentration and memory findings from the claimant's mental status examination with Dr. Theresa Horton, Ph.D. (Tr. 14-15, 390). As relevant here, at step four the ALJ summarized Dr. Horton's mental

status examination findings, which indicated that his concentration was poor at times, as well as state reviewing physician opinions that the claimant was capable of, *inter alia*, performing simple tasks of one to two steps with routine supervision (Dr. 19-21, 70, 86, 390). He then determined that the claimant was limited to, *inter alia*, simple, routine, and repetitive tasks; that he could respond to supervision that was simple, direct, and concrete; and that he could have occasional interaction with co-workers, but that he should have no interaction with the public (Tr. 15). The Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Id.*, at 1204, the undersigned Magistrate Judge finds here that the RFC limitations adequately accounted for his moderate limitations. *See Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2016) ("Unskilled work does not require . . . the ability to maintain attention and concentration for extended periods, an area in which Dr. Tabor noted a moderate limitation.").

As the final part of the claimant's first argument, he contends that he should be limited to sedentary work based on a consultative examination performed by Dr. Christopher Sudduth. Dr. Sudduth found, *inter alia*, that the claimant was unable to tandem walk or heel/toe walk, he could stand but not hop on either foot bilaterally, he had decreased range of motion of the lumbar spine with lumbar spine pain on range of motion assessment, and positive straight leg raise test bilaterally (Tr. 378). The claimant contends that this

indicates he could not perform light work on a sustained basis. In his written opinion, the ALJ summarized Dr. Sudduth's findings and noted that Dr. Sudduth did not offer any further diagnoses beyond his objective findings (Tr. 17-18). The ALJ also noted that state reviewing physicians found the claimant could perform the full range of light work, but that he had limited the claimant further to occasional postural activities based on, *inter alia*, Dr. Sudduth's objective findings (Tr. 20).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two

or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Here, Dr. Sudduth did not offer a medical opinion; rather, he reported the objective test results of his examination but offered no prognosis. Furthermore, the ALJ thoroughly summarized this report, and further *incorporated* the objective findings in the report against the less restrictive state reviewing physician opinions (Tr. 17-18, 20). The ALJ's opinion was sufficiently clear for the Court to evaluate it. The undersigned Magistrate Judge therefore finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Accordingly, the ALJ's determination here is entitled to deference and the undersigned Magistrate Judge finds no error in analyzing the opinions in the record. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") (citation omitted).

Finally, the claimant contends that the jobs identified by the VE and listed by the ALJ in his written opinion do not exist in significant numbers to establish that there is other work he can perform. In his written opinion, the ALJ concluded that the identified jobs – photocopying machine operator, DICOT § 207.685-014, with approximately 10,000 jobs nationally; router, DICOT § 222.587-038, with approximately 34,000 jobs nationally; and collator operator, DICOT § 208.685-010, with approximately 40,000 jobs nationally –

amounted to a significant number of jobs in the economy (Tr. 23). Courts have declined to set a rule establishing what constitutes a significant number of jobs for purposes of the Act. *See, e. g., Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir. 1992). Instead, the ALJ should determine numerical significance based on an individualized evaluation of the facts of each case and, most importantly, his own common sense. *Allen v. Barnhart,* 357 F.3d 1140, 1144 (10th Cir. 2004) (*citing Trimiar,* 966 F.2d at 1330). Factors the ALJ should consider in this analysis include: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar,* 966 F.2d at 1330 (internal citations omitted). However, when the number of jobs available in the national economy is "much larger" than the 650 to 900 regional jobs at issue in *Trimiar,* a multi-factor analysis is not necessary. *Raymond v. Astrue,* 356 Fed. Appx. 173, 178 n.2 (10th Cir. 2009) ("*Trimiar* does not hold that . . . a court must engage in a factoral analysis when the number of jobs [nationally] available is, as here (1.34 million), much larger.").

The claimant relies on *Norris v. Barnhart*, 197 Fed. Appx. 771, 777 (10th Cir. 2005) and *Johnson v. Berryhill*, 2017 WL 924477, at *5-6 (N.D. Okla. March 8, 2017), which stand for the proposition that a remand for a specific multi-factor analysis is appropriate when the number of available jobs in the national economy is less than 210,000 jobs. However, the standard of review in both of those cases was the more rigorous harmless error standard because the ALJ erred with respect to one or most of the identified jobs and therefore never analyzed whether the number of remaining jobs was significant in the first

instance. *Norris,* 197 Fed. Appx. at 777; *Johnson*, 2017 WL 924477, at *6. Harmless error applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen,* 357 F.3d at 1145. In this case, because the ALJ found 84,000 jobs total to be a significant number, the Court's role is to review that number using the substantial evidence standard set forth above. *Id.* at 1143-44 (explaining the difference between reviewing an ALJ's factual finding of significance and supplying a dispositive finding for an ALJ). Here, the undersigned Magistrate Judge is persuaded that the ALJ's finding that 84,000 jobs in the national economy constitutes a significant number is supported by substantial evidence. *See Trimiar,* 966 F.2d at 1332 (noting that courts need not "strain at numbers" when deciding whether an ALJ's findings concerning what constitutes a significant number of jobs if the ALJ's decision is otherwise supported by substantial evidence). *See also Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers* [*v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009)] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is also significant."). Furthermore, the ALJ's determination is consistent with courts in this circuit as well as persuasive authority from other circuits suggesting that far fewer than 84,000 jobs can constitute a significant number of jobs in the national economy. *See, e. g., Rogers*, 312 F. Appx. at 142 (finding the ALJ could rely on 11,000 jobs nationally as substantial evidence to support her finding of non-disability); *Jones v. Colvin,* 2015 WL 5573074, at *3 (E.D. Okla. Sept. 22, 2015) (finding

15,520 jobs in the national economy significant); *Holmes v. Saul,* 2019 WL 3290492, at *6 (D.N.M July 22, 2019) (finding 11,700 jobs in the national economy significant). As such, the ALJ's findings at step five of the sequential evaluation are supported by substantial evidence.

The undersigned Magistrate Judge thus finds that the ALJ has identified jobs consistent with the RFC assigned, and that those jobs exist in significant numbers. *See Stokes,* 274 Fed. Appx. at 684 (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform light work with the aforementioned limitations is thus well supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard*, 379 F.3d at 949). The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical record available in this case, *and still concluded* that he could work. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because

the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946).

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**